IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JON CASCELLA, | No. 4:21-CV-01490 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNITED STATES of AMERICA, | |
| Defendant. | |

MEMORANDUM OPINION

AUGUST 30, 2022

Plaintiff Jon Cascella filed the instant lawsuit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80.  He alleges negligence by three Federal Bureau of Prisons (BOP) officials during his incarceration at LSCI Allenwood, in White Deer, Pennsylvania.  Defendants move to dismiss the claims in the amended complaint pursuant to Federal Rule of Civil Procedure 12(b) or for summary judgment under Federal Rule of Civil Procedure 56.  The Court will grant in part and deny in part Defendant's motion to dismiss and will deny without prejudice Defendant's premature Rule 56 motion.

I.      BACKGROUND

Cascella's complaint is succinct—spanning only four pages—and it is not particularly complicated.[1]  Cascella, who suffers from serious mental health

---

[1]   *See generally* Doc. 1.

issues,[2] claims that in February and March 2020 he was able to commit self-harm on three occasions due to the negligence of two LSCI Allenwood medical providers.[3] He further alleges that a BOP corrections officer negligently applied restraints too tightly, causing permanent injuries to his legs.[4]

Cascella first asserts that, on February 4, 2020, even though he was on suicide watch, Christine Schmidt, PhD, gave him a "sharp pencil," which Cascella used to cut his left arm.[5] He next avers that on February 18, 2020, nurse Ariel Yordy[6] gave him a syringe while he was in the "suicide cell," in violation of BOP policy and procedure.[7] Cascella does not state in his complaint what he did with the syringe, but it is presumed that he used it to harm himself because he alleges that the "syringe incident" resulted in "permanent scars."[8]

Finally, Cascella asserts that, after the February 18 "syringe incident," Dr. Schmidt had him removed from his suicide cell and placed in the special housing unit (SHU) in a "high risk situation," which allowed him to acquire a razor blade at some unspecified time.[9] Then, on March 12, 2020, he used that razor blade to cut

---

[2] *See, e.g.*, Doc. 1-3 at 2 (noting in medical records provided by Cascella that he is on "psychotropic medication" and was on suicide watch as of February 4, 2020).
[3] Doc. 1 ¶¶ 3-5.
[4] *Id.* ¶ 5(d).
[5] *Id.* ¶ 5(a).
[6] Cascella incorrectly spells Ariel Yordy's last name as "Yordie" in his complaint. The Court will use the correct spelling provided by defense counsel. *See* Doc. 20 at 1.
[7] Doc. 1 ¶ 5(b).
[8] *See id.*
[9] *Id.* ¶ 5(c).

himself five times.[10]  After being treated by medical staff, Cascella alleges that Lieutenant Justin Foura shackled his legs too tightly, causing "4 deep lacerations" by the leg restraints in both of his legs.[11]

Cascella filed an administrative claim with the BOP,[12] which was denied on July 23, 2021.[13]  He then filed the instant FTCA lawsuit on August 30, 2021.[14]  Cascella asserts that Dr. Schmidt, Yordy, and Foura "committed [] acts of negligence" that caused him to suffer "5 lacerations on his left arm and also 2 anterior and 2 posterior laceration[s] on his left and right legs which are now permanent scars."[15]  Notably, Cascella sued the United States,[16] the only proper defendant in an FTCA claim.[17]  Cascella's complaint also contains a single statement that he "brings this action against the defendants"—Dr. Schmidt, Yordy, and Foura—"as the agents, servants and employees, of defendant, the United States of America."[18]  To the extent that this assertion can be construed as Cascella suing these federal agents in their official capacities, those claims are barred by

---

[10]  *Id.* ¶ 5(d).
[11]  *Id.*
[12]  *See* Doc. 1-2 at 2.
[13]  *Id.*
[14]  Doc. 1.
[15]  *Id.* ¶¶ 3, 4.
[16]  *See id.* ¶ 1 ("Plaintiff brings this action against[] the United States of America, pursuant to the Federal Tort Claims Act[.]"); *see also id.* at p.1 (naming only "United States of America" in caption as the sole defendant).
[17]  *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).
[18]  Doc. 1 ¶ 3.

sovereign immunity.[19]  Consequently, Cascella's FTCA claims involve a single Defendant: the United States.

Defendant, after several extensions of time, responded to Cascella's complaint with a lengthy motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) "and/or" for summary judgment under Rule 56.[20]  Those motions are ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[21]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[22]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as

---

[19] *See Gary v. F.T.C.*, 526 F. App'x 146, 149 (3d Cir. 2013) (nonprecedential) (agreeing with district court that claims against federal employees in their official capacities are barred by sovereign immunity (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994))).  For the same reason, if Cascella is attempting to sue the BOP, that claim is likewise barred by sovereign immunity. *See id.* (agreeing with district court that claims against the FTC are barred by sovereign immunity).

[20] Doc. 44.

[21] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[22] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[23]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[24] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[25] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[26] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[27] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[28]

Because Cascella proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[29] This is particularly true when the *pro se* litigant, like Cascella, is incarcerated.[30]

---

[23] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[24] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[25] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[26] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[27] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[28] *Iqbal*, 556 U.S. at 681.
[29] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[30] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### III. DISCUSSION

There are two threshold issues that must be resolved before the Court can address Defendant's motions. First, there is some confusion as to what type of negligence claims Cascella is asserting through the FTCA.[31] Defendant interprets the negligence claims against Dr. Schmidt and Yordy as sounding in professional liability (or medical malpractice),[32] while Cascella appears to contend that he is alleging only common law negligence claims. Second, the Court must clarify what FTCA claims it has subject matter jurisdiction over in light of the extent of Cascella's administrative exhaustion.

### A.  Negligence or Professional Liability

As noted above, Defendant maintains that Cascella's claims against Dr. Schmidt and Yordy implicate medical malpractice. Cascella, for his part, filed what he titled a "motion for determination as to the necessity of a certificate of merit pursuant to [Pennsylvania Rule of Civil Procedure] 1042.6(c)."[33] In that motion, however, he appears to take two conflicting positions. First, he asserts that

---

[31] "The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment." *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018); *see also* 28 U.S.C. § 1346(b)(1). "[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court. Thus, 'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'" *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361-62 (3d Cir. 2001) (quoting *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75 (3d Cir. 1996)).
[32] *See* Doc. 27 ¶ 19; Doc. 60 at 22.
[33] Doc. 36.

he should be able to proceed under Rule 1042.3(a)(3),[34] which permits a plaintiff to file a certificate of merit for a professional liability claim stating that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the [professional liability] claim."[35]  He then asks the Court to "amend [his] claim of medical malpractice to straightforward negligence" because his complaint involves "the failure of prison personnel to comply with specified Bureau of Prison protocols and not the assessment of professional judgment."[36]  These two positions are contradictory because the first (filing a certificate of merit under Rule 1042.3(a)(3)) involves pursuing a professional liability claim and the second (seeking to assert only negligence claims, *not* medical malpractice claims) does not.

The Court observes that, in its December 8, 2021 Order, it specifically noted that "upon review of [Cascella]'s complaint, it is not clear that [he] is asserting claims of medical malpractice against the medical defendants.  A certificate of merit is only required under Pennsylvania law when the plaintiff's action is 'based upon an allegation that a licensed professional deviated from an acceptable professional standard,' *i.e.,* 'professional liability' or malpractice."[37]  The Court then informed Cascella that if he desired "to clarify that any claim in his complaint

---

[34] *See* Doc. 36 at 1.
[35] PA. R. CIV. P. 1042.3(a)(3).
[36] Doc. 36 at 2.
[37] Doc. 33 at 2 n.8.

against a medical provider does not involve professional liability and thus does not necessitate a certificate of merit, he may file a motion pursuant to PA. R. CIV. P. 1042.6(c)."[38]

Cascella has filed such a Rule 1042.6(c) motion. The Court finds that most of Cascella's allegations do not implicate professional judgment or integral medical treatment decisions.[39] He essentially alleges that he was negligently given sharp objects by Dr. Schmidt and Yordy while in a "suicide cell," in contravention of BOP policy.[40] These claims sound in common law negligence, and thus no certificate of merit is required.

However, the allegation that Dr. Schmidt negligently placed Cascella in the SHU instead of a "suicide cell," allowing him to acquire a razor blade,[41] appears to be one that implicates medical judgment. But, as Cascella has filed a substantially compliant certificate of merit under Rule 1042.3(a)(3),[42] that professional liability claim is not subject to summary dismissal. Nevertheless, as the Pennsylvania Rules of Civil Procedure caution: if a plaintiff "certifies under subdivision (a)(3) that an expert is unnecessary for prosecution of the claim, in the absence of

---

[38] *Id.*
[39] *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (nonprecedential) (explaining that a "critical feature" of a medical malpractice action is that it "turns on 'questions involving medical judgment'" (quoting *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. Ct. 2007))).
[40] Doc. 1 ¶ 5(a), (b).
[41] *Id.* ¶ 5(c).
[42] *See* Doc. 36.

exceptional circumstances the [plaintiff] is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation."[43] In other words, absent exceptional circumstances, a plaintiff—like Cascella—who chooses to proceed via subdivision (a)(3) is bound by that choice in later stages of the litigation.

### B.   Administrative Exhaustion

Before a plaintiff can bring an FTCA claim in federal court, he must first exhaust available administrative remedies.[44] Exhaustion of FTCA claims is jurisdictional in nature and cannot be waived.[45] And federal courts are obligated to satisfy themselves that they have jurisdiction before proceeding to the merits of a claim, even if neither party raises the issue.[46] "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts."[47] Thus, a plaintiff must "(1) give[] the

---

[43] PA. R. CIV. P. 1042.3(a)(3), Note.
[44] *See* 28 U.S.C. § 2675(a).
[45] *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citation omitted).
[46] *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012); *GBForefront, L.P. v. Forefront Mgmt. Grp.*, 888 F.3d 29, 34 (3d Cir. 2018); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) (explaining that "the court can raise *sua sponte* subject-matter jurisdiction concerns").
[47] *Roma*, 344 F.3d at 362 (quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011-12 (7th Cir. 1991)).

agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place[] a value on his or her claim."[48]

Cascella filed an administrative claim and provided a copy of the BOP's denial along with his federal complaint.[49] In the BOP's response, Regional Counsel gave the following rationale for denying Cascella's claim:

> Your Administrative Claim . . . has been considered for settlement as provided by the [FTCA] . . . . Damages are sought in the amount of $95,000.00 based on a personal injury claim. *Specifically, you allege on March 12, 2020, you were not provided proper mental health care by staff at LSCI Allenwood, resulting in you cutting your wrist and being injured by tight restraints*. An investigation reflects there is not sufficient evidence to substantiate the allegations of this claim. On March 12, 2020, you found a razor blade in your cell and began making statements of self-harm. You refused direct orders to drop the razor and submit to hand restraints. You began cutting your wrist. Staff deployed chemical munitions pursuant to policy, but you continued to cut yourself. Staff deployed a second round of chemical munitions, at which point you complied with staff orders and were placed in hard ambulatory restraints. A medical staff member assessed your restraints and confirmed you had proper circulation. You were medically evaluated and treated for your injuries. There is no evidence you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee. Accordingly, your claim is denied.[50]

Through the lens of this administrative denial, it appears that the only claims Cascella presented to the BOP involved the March 12, 2020 events. Neither the February 4 nor the February 18 incident is mentioned or discussed in the denial.

---

[48] *Id.* (quoting *Tucker v. United States Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982)).
[49] *See* Doc. 1-2 at 2.
[50] *Id.* (emphasis added).

10

Consequently, the only FTCA claims that Cascella seems to have exhausted involve Dr. Schmidt and Foura and concern the March 12, 2020 events of self-harm and leg restraints, as Cascella "cannot present one claim to the agency and then maintain suit on the basis of a different set of facts."[51]

Cascella—if he is able—will be permitted to supplement the record with evidentiary support establishing that he properly exhausted the other underlying negligence claims in the instant FTCA action. Failure to do so will result in dismissal, for lack of subject matter jurisdiction, of the FTCA claim involving Yordy and the February 18, 2020 incident, as well as any claims based on the events of February 4, 2020.[52]

### C. Motion to Dismiss

Defendant moves under Rule 12(b)(1) to dismiss the FTCA claim involving Foura's placement of the leg restraints as barred by the discretionary function exception to the FTCA. Defendant describes the claim as "challeng[ing] the decision to place [Cascella] in ambulatory restraints instead of placing him on suicide watch after he cut his wrists with a razor blade on March 12, 2020."[53] Defendant argues that such a decision is a discretionary function for BOP officers and is therefore insulated from suit under the FTCA.

---

[51] *Roma*, 344 F.3d at 362 (quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011-12 (7th Cir. 1991)).
[52] *See id.* at 363.
[53] Doc. 60 at 33 (citing Doc. 1 ¶ 5(d)).

11

The Court disagrees with Defendant's interpretation of the complaint. While Cascella does mention that he should have been placed in a suicide cell, the gravamen of his claim against Foura is that Foura allegedly "tightened the shackles so tight he caused the leg restraints to cut 4 deep lacerations into both of [Cascella's] legs" and left him with permanent scarring.[54] The discretionary function exception would not apply to such a claim.[55] As such, Defendant's Rule 12(b)(1) motion will be denied.

### D. Motion for Summary Judgment

Defendant's motion for summary judgment as to the merits of Cascella's FTCA claims requires only brief discussion. Such a motion, at this procedural juncture, is premature. There has been no ruling on a motion to dismiss or an answer filed, nor has a case management order been issued setting discovery and dispositive-motion deadlines. Moreover, as explained in this Memorandum

---

[54] Doc. 1 ¶ 5(d).
[55] To the extent that Cascella *is* challenging the use of restraints, Defendant is correct that such a claim would be barred by the discretionary function exception. *See Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (explaining that discretionary function exception eliminates "jurisdiction for claims based upon the exercise of a discretionary function on the part of any employee of the government") (citing 28 U.S.C. § 2680(a)). BOP regulations clearly authorize (but do not mandate) the application of restraints when an inmate attempts suicide or inflicts injury upon himself. *See* U.S. DEP'T OF JUSTICE, FED. BUREAU OF PRISONS, *Program Statement P5566.06 Use of Force & Application of Restraints* § 1(c), (d) (2005); *see also* 28 C.F.R. § 552.20(c), (d). And these types of disciplinary and inmate-protection decisions are clearly "the kind that the discretionary function exception was designed to shield." *Baer*, 722 F.3d at 172 (citation omitted). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 172-73 (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)).

Opinion, there were disagreements between the parties as to the type of negligence claims involved and there remains an unresolved jurisdictional issue concerning administrative exhaustion. Thus, the Court would be remiss to address a Rule 56 motion challenging the merits of Cascella's claims without first resolving the jurisdictional issues and granting Cascella adequate time and opportunity to engage in discovery.[56] Therefore, the Court will dismiss Defendant's Rule 56 motion without prejudice to Defendant's right to refile said motion at the appropriate time.

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendant's motion to dismiss and will deny without prejudice Defendant's motion for summary judgment. Cascella will be given an opportunity to establish jurisdiction for his FTCA claims, as more fully explained above. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[56] *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 256-57 (3d Cir. 2007) (explaining that courts must provide adequate time to obtain discovery to oppose a Rule 56 motion, since "by its very nature, the summary judgment process presupposes the existence of an adequate record").